606 So.2d 927 (1992)
Mary TOUCHARD, Plaintiff-Appellant,
v.
Brenda WILLIAMS, et al., Defendants-Appellees.
No. 91-515.
Court of Appeal of Louisiana, Third Circuit.
October 6, 1992.
Writ Granted December 21, 1992.
*928 Pucheu & Pucheu, John N. Pucheu, Eunice, for plaintiff/appellant in No. 91-515.
Sam N. Gregorio, Shreveport, for plaintiff/appellant in No. 91-516.
Roy & Hattan, L. Lane Roy, Lafayette, for Martha Causey and Allstate Ins. Co.
Voorhies & Labbe, Robert A. Lecky, Lafayette, for Steven L. Lege and Texas Farmers Ins. Co.
Dauzat, Falgoust, Caviness, Bienvenu & Stipe, Steven J. Bienvenu, Opelousas, for Brenda Williams and State Farm Ins. Co.
Cooper, Ortego & Woodruff, John E. Ortego, Abbeville, for State Farm Ins. Co.
Before STOKER, KNOLL and MARCANTEL,[*] JJ.
BERNARD N. MARCANTEL, Judge Pro Tem.
The issues on appeal are whether the jury erred in its allocation of fault; whether the lump sum award by the jury is too low; and, whether the trial court erred in its interpretation and application of La.C.C. art. 2324, as amended effective September 1, 1987.
This suit for damages arises out of a multi-car pile-up on Interstate 10 on September 17, 1987. Plaintiff, Mary Touchard, filed suit against Brenda Williams, Williams' insurer, State Farm Mutual Insurance Company, Steven L. Lege, his insurer, Texas Farmers Insurance Company (hereinafter defendants), and Vernon Causey d/b/a Cafi & Company.
Plaintiff's lawsuit was consolidated for trial with the suit of James H. Minter who was also injured in the accident. The consolidated cases were tried on April 23, 1990, through April 30, 1990. The jury found that plaintiff's injuries were caused by the joint negligence of Brenda Williams, Martha Causey and Steven Lege, and awarded her a lump sum of $100,000.00. The jury also ruled in favor of James H. Minter, awarding him the sum of $250,000.00.
Judgment was signed on September 7, 1990, and plaintiff timely appealed. State Farm Mutual Automobile Insurance Company filed an answer to the appeal in its position as uninsured/underinsured motorist insurer of plaintiff.
Plaintiff in the consolidated case, James H. Minter, appeals on the issue of judicial interest.[1]

*929 FACTS
This action arises out of two separate but related collisions that occurred in the eastbound lane of Interstate 10 near the Duson-Mire exit on September 17, 1987. Four vehicles were involved. The vehicles and their respective drivers were: (1) a 1976 Oldsmobile Cutlass driven by Brenda Williams; (2) a 1976 Pontiac Grand Prix driven by James H. Minter; (3) a 1985 Chrysler Fifth Avenue driven by Martha Causey; and (4) a 1986 Buick Skylark driven by Steven L. Lege. Plaintiff, Mary Touchard, was a passenger in the Williams vehicle and Daviona Lege was a passenger in the Lege vehicle.
None of the drivers or passengers were able to witness the entire sequence of events but the results were that one collision occurred between the Cutlass driven by Williams and the Buick driven by Lege. The other collision was between the Pontiac driven by Minter and the Chrysler driven by Causey.
The drivers all agreed to the fact that it was raining at the time of the accident. Also, there seems to be no serious dispute over the fact that Williams, who was driving the lead car, lost control of the Cutlass, spun around on the highway, and came to rest facing North with its back half partially blocking the left eastbound lane. The Cutlass stalled and Williams was unable to start the car and move it from the path of any cars approaching in her lane.
Minter testified that he saw the Cutlass in his lane of travel when he was a considerable distance from it and was aware that he had time to slow down and stop without hitting it. But, Minter said, before he was able to completely stop, he saw in his rear view mirror the Chrysler, being driven by Causey, approaching him and not stopping. As the Chrysler struck Minter's car, he was able to turn his wheels to the left so that his car went into the median instead of hitting the Cutlass.
Causey admitted to striking Minter from behind but stated that she was the last car involved in the accident. She testified that she was traveling down the interstate, driving between 50 and 55 miles per hour, when she suddenly saw the brake lights of the Minter vehicle. She reacted by slamming on her brakes but, because of her speed and the wet pavement, she was unable to avoid crashing into Minter's Pontiac.
Steven Lege testified that he was traveling down the interstate in the left lane and he saw the car in front of him, the Chrysler, swerve to the right. At that point, he saw another car in front of him, the vehicle occupied by Williams and Touchard, and he applied his brakes but slid and struck it.
James L. Simon, a Senior Trooper with the Louisiana State Police, testified as to the positioning of the vehicles. He stated that the Cutlass was first, the Pontiac second, the Chrysler third, and the Buick fourth. Martha Causey disagreed, stating that the Buick was second, the Pontiac third, and the Chrysler was fourth.
Plaintiff brought this action seeking damages for personal injuries sustained in the accident. She presented medical testimony regarding her injuries, the most severe being a damaged disc at L5-S1 level, which began pinching on a nerve root and required surgery. Other injuries included a ligamentous injury to the cervical spine, a bad contusion of her left shoulder and clavicle joint, muscle spasms, bruises over her entire torso, a concussion, and bruises on her forehead and temple.
Also, plaintiff presented evidence of lost income, as a result of her injuries and treatment, in the amount of $17,530.44 from her primary job as manager of a housing development and $2,000.00 a year from a second job as a cashier, which she can no longer perform. Medical bills incurred from the time of the accident up until trial were presented in the amount of $53,829.94.
Contradictory testimony was presented regarding plaintiff's long history of back problems which included an operation in 1979 for a lumbar spine problem at L4-5 level and a reinjury of her lower back in 1987.
After all the evidence was presented and the jury was instructed by the court, the *930 jury returned a verdict holding Brenda Williams 63% at fault, Martha Causey 30% at fault and Steven Lege 7% at fault. Plaintiff's total award was in the amount of $100,000.00.
Plaintiff now appeals the percentages of fault assigned to the different defendants, the amount of the award, and the interpretation of La.C.C. art. 2324 B.

LAW

Allocation of Fault
Plaintiff contends that the jury erred when it assigned fault in the amount of 63% to Brenda Williams, in light of the evidence presented at trial, and that the jury should have assessed defendants, Mary Causey and Steven Lege, with greater percentages of fault.
It is well settled that an appellate court may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong," and, where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
When findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell, supra.
After a thorough review of the record, we do not find that the jury's verdict in its assignment of fault was manifestly erroneous. Therefore, this assignment of error is without merit.

Damage Award
Plaintiff contends that, in light of the evidence presented, the jury award of $100,000.00 was too low and should be increased to $130,000.00.
It is well settled that an appellate court may not disturb an award made by a trial court absent an abuse of discretion by the trier of fact. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Matthias v. Brown, 551 So.2d 821 (La.App. 3 Cir.1989), writ denied 556 So.2d 1263 (La. 1990). Since we find no abuse of discretion by the trier of fact, we affirm the jury award.
Interpretation and Application of La. C.C. Art. 2324 B
La.C.C. art. 2324 reads in pertinent part:
"B. If liability is not solidary pursuant to Paragraph A, or as otherwise provided by law, then liability for damages caused by two or more persons shall be solidary only to the extent necessary for the person suffering injury, death, or loss to recover fifty percent of his recoverable damages. ... Under the provisions of this Article, all parties shall enjoy their respective rights of indemnity and contribution. Except as described in Paragraph A of this Article, or as otherwise provided by law, and hereinabove, the liability for damages caused by two or more persons shall be a joint, divisible obligation, and a joint tortfeasor shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, or immunity by statute or otherwise."
Because there is a lack of jurisprudence interpreting and applying art. 2324 B, we have looked to writings of legal scholars on the subject. One such scholar is David W. Robertson, A.W. Walker Centennial Chair in Law, University of Texas, whose article, "Louisiana Law of Comparative Fault: A Decade of Progress," Louisiana Practice Series, Volume 1 (May 1991), gives a good explanation of the application of art. 2324 B. The following is an excerpt from the article:

*931 "[T]he key change made by the 1987 amendment to article 2324 was restricting solidary liability in almost all cases to `the extent necessary for [P] to recover fifty percent of [her] recoverable damages.' * * * The phrase `recoverable damages' is ambiguous. It might mean: (a) plaintiff's total assessed damages; (b) plaintiff's total assessed damages minus a reduction to reflect plaintiff's percentage of fault; or (c) plaintiff's total assessed damages minus a reduction to reflect plaintiff's percentage of fault and minus a further reduction to reflect the percentage of fault of any settling tortfeasor. * * * There are several reasons for believing the first interpretation is the most tenable. It is much simpler and easier to work with. It is more consistent with the general principle that statutes in derogation of judicially-established rights of long standing are to be strictly construed, i.e., are to be `given the effect which makes the least rather than the most change in the existing body of law.' * * * One law review writer has ably argued for the first interpretation, * * * and one reported decision seemingly accepts it. * * * This book will follow suit and take `recoverable damages' to mean full assessed damages before any reduction to reflect victim or settling tortfeasor fault. * * *
When P, with $100,000 in damages and 20% of the assessed fault, sues A (10%), B (30%), and C (40%) in a case governed by the new article, A`s exposure will be unchanged: $10,000. B will be individually liable for $30,000 and solidarily liable up to $50,000. C will be individually liable for $40,000 and solidarily liable up to $50,000. These determinations can be charted * * * as follows:

 Total damages P(20%) A(10%) B(30%) C(40%)
 $100,000 +$80k 10k[0] 30k[50k] 40k[50k]

If all of the tortfeasors are solvent P`s situation will not be altered by the 1987 amendment to article 2324: She will still collect her full $80,000.
But suppose A is insolvent. P can collect only $70,000 in this situation; because B`s and C`s individual shares aggregate more than $50,000, they have no functional solidary exposure. Suppose B is insolvent. Here P will be enabled to collect only $50,000, the aggregate of A`s and C`s individual shares. Since these total 50% of P`s damages, there will be no resort to C`s solidary liability. If A and B were both insolvent, C would have solidary exposure up to $50,000. Similarly, if C is insolvent, P will again be limited to $50,000, with A ultimately bearing $10,000 and B $40,000. B`s limited solidary liability is invoked in this situation only the extent necessary to bring P up to $50,000. If A and C were both insolvent, B would bear the full $50,000." (Footnotes omitted. Emphasis added.)
This court agrees with Professor Robertson's explanation and holds that, under article 2324 B, joint tortfeasors are solidarily liable only to the extent necessary for the victim to recover 50% of his recoverable damages. In applying the article to the case at hand, plaintiff has received the policy limits of $25,000.00 from State Farm and Brenda Williams; $30,000.00 from Allstate and Martha Causey; and, $7,000.00 from Texas Farmers Insurance Company and Steven Lege. This amounts to $62,000.00 of the $100,000.00 award. Judgment was granted against Brenda Williams, individually, for $38,000.00. Plaintiff has received 62% of the recoverable amount. Therefore, because plaintiff has recovered more than 50% of the recoverable damages, under La.C.C. art. 2324 B, there is no functional solidarity. Accordingly, the application employed by the trial court is correct.
Plaintiff next contends that the issue of solidarity is an affirmative defense that defendants did not raise and, because they *932 failed to meet their burden of proof, they should be held totally solidarily liable.
Solidarity is not an affirmative defense but takes effect as a matter of law. However, this is not an issue because, as previously discussed, plaintiff has recovered more than 50% of her recoverable damages.
It is not necessary to address the issues raised by State Farm in their answer to the appeal because of this court's affirmation of the trial court's application of art. 2324 B and the trial court's determination that State Farm in its capacity as uninsured motorist insurer was not liable to plaintiff because none of the defendants qualified as uninsured/underinsured motorists within the meaning of State Farm's policy and Louisiana law.

Judicial Interest
In the consolidated case, James H. Minter, et ux. v. Martha Causey, et al., a portion of the judgment was rendered in favor of James H. Minter and against Martha Causey and Allstate Insurance Company, in solido, in the amount of $100,000.00, plus legal interest on that amount from date of judicial demand, until paid. There was further judgment in favor of James H. Minter and against Martha Causey, individually, in the amount of $75,000.00, plus legal interest from the date of judicial demand, until paid. This judgment did not require Allstate Insurance Company to pay judicial interest on the judgment over and above its policy limits. It is for this sole matter that plaintiff, James H. Minter, appeals in the consolidated suit.
Minter contends that Allstate Insurance Company should have paid judicial interest from date of judicial demand on $175,000.00 for which Martha Causey was cast, instead of paying interest only on the $100,000.00 policy limits.
Minter relies on the holding in McLemore v. Fox, 565 So.2d 1031 (La.App. 3 Cir.1990), writ denied 569 So.2d 966, 968 (La.1990), which affirmed the trial court's finding that the insurer was liable for judicial interest on the total award made to plaintiffs from the date of judicial demand until paid, and not just on the policy limits.
Although we agree with Minter in that the policy language in McLemore, supra, and the case sub judice are similar, we disagree that the results should be the same. In McLemore, supra, the court could not find where an unconditional tender of the policy limits had been made. In the case sub judice, both Allstate Insurance Company and Minter admit that the principal and interest on the policy limits of $100,000.00 have been paid. Therefore, we affirm the trial court's judgment in not requiring Allstate Insurance Company to pay judicial interest on that portion of the judgment over and above the policy limits.
For the reasons assigned, the judgment of the trial court is affirmed. Costs of this appeal are assessed against plaintiff-appellant, Mary Touchard.
AFFIRMED.
NOTES
[*] Honorable Bernard N. Marcantel participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] This issue will be addressed in the body of this opinion and a separate judgment will be rendered in the consolidated case of Minter v. Martha Causey, 606 So.2d 932 (La.App. 3 Cir.1992).