STEVE RICHARD
v.
BAYOU LAFOURCHE FRESH WATER DISTRICT.
No. 2008 CA 2263.
Court of Appeals of Louisiana, First Circuit.
May 8, 2009.
Not Designated for Publication
BENNETT BOYD ANDERSON, Jr., MICHAEL V. ARDOIN, Attorneys for Plaintiff/1st Appellant, Steve Richard.
MARK L. ROSS, Attorney for Defendants/2nd Appellants, Bayou Lafourche Fresh Water District and Great American Ins. Co.
Before CARTER, C.J., WHIPPLE and DOWNING, JJ.
CARTER, C. J.
Bayou Lafourche Fresh Water District (the District)[1] appeals the trial court's judgment finding it liable for damages sustained by Steve Richard in this personal injury action brought under the Jones Act and general maritime law and awarding damages. Steve Richard also appeals challenging the amounts awarded.

FACTS AND PROCEDURAL HISTORY
Steve Richard was employed by the District, which maintains Bayou Lafourche. On January 5, 2004, Richard was working as part of a two-man crew, clearing the bayou of trees and logs. The crew utilized a utility barge outfitted with a crane that was moored alongside an eighteen to twenty foot aluminum shuttle boat. The shuttle boat had a small cabin toward the rear, with a canopy extending forward that was supported by vertical bars positioned along each side. What was described as "chains" hung horizontally between the bars.
On the date in question, Richard's responsibility was to use a 20-inch chainsaw to cut trees and logs so that they could be moved by the crane, which was operated by his co-worker. While working, Richard crossed from the barge to the shuttle boat by stepping onto the boat's bow, while holding onto one of the vertical bars supporting the canopy. As Richard did so, he slipped on the deck of the shuttle boat, which was made more slippery than usual by a light drizzling rain. Richard fell and landed on the chainsaw that he had placed on the shuttle boat deck.
At the time of his accident, Richard was forty-three years old, weighed over 300 pounds, and had Type II diabetes. Nonetheless, Richard completed a pre-employment physical and, prior to the accident, was able to adequately perform his job duties without pain.
Richard claimed that immediately after falling, he experienced pain in his arm, elbow, and lower back. Richard testified that the arm and elbow pain resolved, but that he experiences continuing pain in his lower back and left leg. Richard sought medical treatment. An MRI revealed disc protrusions at multiple levels. Surgery was ruled out as an option, and Richard was referred to a chronic pain management specialist, under whose active care Richard remained at the time of trial. Richard's employment with the District was eventually terminated, and Richard did not work in any capacity thereafter.
Richard filed suit seeking to recover damages under the Jones Act and general maritime law.[2] The matter proceeded to a bench trial, with some of the medical testimony adduced live and some submitted by deposition. After taking the matter under advisement, the trial court rendered its decision finding the shuttle boat to be unseaworthy, which caused Richard to fall and caused a pre-existing degenerative back condition to become symptomatic. The trial court determined the District to be 100% liable for Richard's injuries. The trial court awarded Richard a total of $335,810.55, representing: $11,302.71 for past unpaid medical expenses; $64,507.84 for past lost wages and fringe benefits; $175,000.00 for past general damages; $10,000.00 for future medical expenses; and $75,000.00 for future loss of earning capacity. The trial court ordered that the $10,000.00 awarded for future medical expenses be deposited into a reversionary trust in accordance with LSA-R.S. 13:5106B(3)(a).
Both the District and Richard now appeal, with the District challenging liability as well as the general damages award and the loss of future earning capacity award. Richard contends the trial court failed to give the appropriate weight to his treating physician's deposition testimony and records, that the amounts awarded are erroneous, and finally that the trial court erred in ordering that the future medical expenses award be placed in a reversionary trust.

DISCUSSION
In general maritime and Jones Act cases, Louisiana appellate courts apply the manifest error-clearly wrong standard of review to findings of fact. Coutee v. Global Marine Drilling Co., 05-0756 (La. 2/22/06), 924 So.2d 112, 116. Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong. Coutee, 924 So.2d at 116.

Unseaworthiness
The trial court found that the shuttle boat was unseaworthy due to its slippery deck. A vessel owner has an absolute duty to furnish a seaworthy vessel, meaning a vessel and equipment reasonably suited for the intended purposes. Vendetto v. Sonat Offshore Drilling Co., 97-3103 (La. 1/20/99), 725 So.2d 474, 481, cert. denied, 527 U.S. 1023, 119 S.Ct. 2369, 144 L.Ed.2d 773 (1999); Derouen v. Mallard Bay Drilling, LLC, 00-1268 (La. App. 1 Cir. 6/22/01), 808 So.2d 694, 704. A breach of that duty gives rise to a claim for general damages. Whether a vessel is unseaworthy is a factual question to be decided on a case-by-case basis. Vendetto, 725 So.2d at 481.
This trial court's finding that the shuttle boat was unseaworthy is supported by the testimony of the District's employees, who agreed that the deck was slippery, as well as the testimony of David E. Cole, who testified as an expert in the field of maritime and safety vessel regulations. Cole stated his expert opinion to be that the shuttle boat was unseaworthy due to the slippery deck, which was accentuated by the sloped bow, as well as the District's failure to require employees to wear slip-resistant footwear.[3]
Maritime jurisprudence establishes that a seaman is not absolutely entitled to a deck that is not slippery. He is entitled to a deck that is not unreasonably slippery. Garcia v. Murphy Pacific Marine Salvaging Co., 476 F.2d 303, 305 (5th Cir. 1973). After reviewing the record before us, we cannot say that the trial court's factual finding that the shuttle boat was unseaworthy was manifestly erroneous.

Causation
The causation requirement for claims of unseaworthiness is more stringent than that for Jones Act claims. In an unseaworthiness claim, the plaintiff must show that the unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness. Derouen, 808 So.2d at 705. The trial court's finding on the issue of causation is one of fact and is reviewed under the manifest error standard. See In re Omega Protein, Inc., 548 F.3d 361, 367 (5th Cir. 2008); Coutee, 924 So.2dat 116.
Richard fell when he stepped from the barge onto the upward sloping bow of the shuttle boat. The District argues that any injuries Richard sustained were caused by his own negligence in boarding the shuttle boat by its bow, as opposed to mid-deck. Under general maritime law, a seaman's negligence will bar recovery only if he is found to be 100% at fault; any lesser fault on the part of the seaman will not bar recovery, but will reduce his damages in proportion to the degree of his negligence. See Foster v. Destin Trading Corp., 96-0803 (La. 5/30/97), 700 So.2d 199, 209.
Richard testified that he boarded the shuttle boat "how we always did it," which he did by stepping onto the bow, while holding onto a vertical bar that supports the canopy. The District questioned expert witness Cole about whether it would have been safer for Richard to board the shuttle boat middeck. Cole pointed out the chains present mid-deck. In response to further questioning, Cole stated he was unaware that the chains could easily be unlatched. Moreover, Richard did not testify that he knew the chains could be removed so as to board the shuttle boat mid-deck. The trial court obviously credited Richard's testimony to the extent that there was conflicting testimony on the issue.
Considering the record before us, we find no manifest error in the trial court's finding that the District did not meet its burden of proving that Richard was negligent in boarding the shuttle boat.[4] We likewise find no manifest error in the trial court's factual finding that Richard's injuries were caused by the unseaworthiness of the shuttle boat.
With regard to the injuries that Richard sustained as a result of the accident and for which the District must compensate him, the trial court was again required to weigh medical opinions and evidence to reach its conclusion. Post accident medical records and diagnostic tests generally reflected degenerative spinal changes, but no nerve root damage. The trial court was presented with medical testimony and records that presented a conflict as to whether: 1) the degenerative changes were directly caused by the accident; or 2) the degenerative changes existed before the accident and were asymptomatic, but were aggravated by the accident. The trial court accepted the opinion of those experts who believed that the degenerative changes were pre-existing and aggravated by the accident.[5] Thus, the trial court concluded that Richard's back condition was pre-existing and was aggravated by the accident.[6] There were two permissible views of the evidence; therefore, the trial court's choice between those views cannot be manifestly erroneous.
The trial court correctly stated that the employer must take his victim as he finds him and compensate him for the aggravation caused by the accident for which the employer is liable. See Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 982 n.18 (5th Cir. 1978); Lasha v. Olin Corp., 625 So.2d 1002, 1005 (La. 1993). The trial court heard conflicting medical testimony and was presented with conflicting medical evidence as to whether Richard's continued symptoms were more likely related to the accident or his diabetes and weight. The trial court weighed the testimony and evidence and determined that at some point between the accident and trial, Richard's symptoms were being caused by his diabetes and obesity rather than the aggravation of his pre-existing condition. Moreover, the trial court found that since the accident, Richard had ignored the advice of a number of physicians, including his treating physician, to lose weight and attend physical therapy. The trial court found no doubt that Richard failed to mitigate his damages, stating that Richard's attitude about his general state of health was "very disturbing and disconcerting."
The trial court credited those doctors, particularly Dr. Cenac, who opined that the aggravation caused by the fall had resolved and that Richard's continued pain was being caused by Richard's obesity and diabetes. Further, the trial court found that Richard breached his duty to mitigate his damages by failing to lose weight, pursue physical therapy, and follow prescribed courses of treatment. Again, we are mindful that where there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous or clearly wrong. Coutee, 924 So.2d at 116. While this court may have decided differently were we sitting as the fact finder, given the conflicting medical testimony, we cannot say that the trial court's factual finding is manifestly erroneous.

Quantum
The trial court awarded Richard damages in the following amounts: $11,302.71 for past unpaid medical expenses; $64,507.84 for past lost wages and fringe benefits; $175,000.00 for past general damages; $10,000.00 for future medical expenses; and $75,000.00 for loss of future earning capacity.
Richard challenges the trial court's awards of general damages, future lost wages/earning capacity and future medical expenses, contending that the awards should not have been reduced for his failure to mitigate his damages, and also that the trial court erred in finding that the injuries causally related to the accident were temporary in nature. We have already determined that the trial court did not commit manifest error in making those factual findings. Accordingly, we find no merit in these arguments.
The District has challenged the general damages award, contending that the trial court abused its discretion in awarding general damages and that the award should be reduced. In reviewing general damages, the role of an appellate court is not to decide what it considers to be an appropriate award, but to review the exercise of the trial court's discretion. Wainwright v. Fontenot, 00-0492 (La. 10/17/00), 774 So.2d 70, 74. The discretion vested in the fact finder is great, even "vast," so that an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La. 1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The trial court found Richard to be "credible and genuine" with regard to his complaints of pain. Richard testified that four or five days per week, he would rate his pain an eight on a scale of one to ten. Considering the entire record, the trial court's finding that Richard failed to mitigate his damages, and the vast discretion afforded the trial court in making its award, we cannot say that the trial court abused its discretion in setting the amount of general damages.
The District also challenges the trial court's award of any damages for loss of future earning capacity since the trial court determined that the injuries causally related to the accident were temporary. We find no merit to this argument.
The record establishes that prior to the accident, Richard was able to adequately perform his job duties without pain. After Richard's pre-existing condition was aggravated by the accident, Richard was no longer able to do so. The record further establishes that Richard will not be able to return to doing such a job in the future, although he may be able to perform some light-duty work within delineated restrictions. An injured seaman is entitled to monetary recovery for past, present and future loss of earning capacity and wages caused by unseaworthiness. Blaauw v. Superior Offshore International, LLC, No. 06-1380, slip op. at 14 (W.D. La. 9/10/08). We find the trial court's award for future loss of earning capacity to be reasonable under the facts of this case.
The trial court ordered that the $10,000.00 awarded for future medical expenses be deposited into a reversionary trust in accordance with LSA-R.S. 13:5106B(3), which provides, in pertinent part:
(a) In any suit for personal injury against a political subdivision wherein the court, pursuant to judgment, determines that the claimant is entitled to medical care and related benefits that may be incurred subsequent to judgment, the court shall order that a reversionary trust be established for the benefit of the claimant and that all medical care and related benefits incurred subsequent to judgment be paid pursuant to the reversionary trust instrument. The reversionary trust instrument shall provide that such medical care and related benefits be paid directly to the provider as they are incurred. Nothing in this Paragraph shall be construed to prevent the parties from entering into a settlement or compromise at any time whereby medical care and related benefits shall be provided, but with the requirement of establishing a reversionary trust.
(b) Any funds remaining in a reversionary trust that is created pursuant to Subparagraph (3)(a) of this Subsection shall revert to the political subdivision that established the trust, upon the death of the claimant or upon the termination of the trust as provided in the trust instrument.
Richard contends the statute should not apply here because the District was insured. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and its letter shall not be disregarded in search of the intent of the legislature or under the pretext of pursuing its spirit. Conerly v. State of Louisiana ex rel. the Louisiana State Penitentiary and the Department of Corrections, 02-1852 (La. App. 1 Cir. 6/27/03), 858 So.2d 636, 642, writ denied, 03-2121 (La. 11/14/03), 858 So.2d 432. As Richard acknowledges, the language of the statute clearly mandates that the questioned amount be placed in a reversionary trust. Richard's arguments regarding the statute's application in cases where insurance is available are best presented to the Legislature.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to Bayou Lafourche Fresh Water District and its insurer, Great American Insurance Company.
AFFIRMED.
NOTES
[1] Joining the District in this appeal is its liability insurer, Great American Insurance Company of New York.
[2] At trial, the parties stipulated to Richard's seaman status.
[3] At trial, the District's director testified that no specific footwear was required as long as it was closed toe with a "tennis shoe" bottom. However, in his pre-trial deposition, the director testified there was no footwear requirement. No written policy was introduced into evidence.
[4] Contrast Foster, 700 So.2d at 209-210 (finding that a 325 pound seaman who "simply chose to cross [between barges] in an unsafe manner against established company safety policy" was negligent and that the seaman's negligence was the sole cause of the resulting accident).
[5] Richard argues on appeal that the testimony of his treating physicians was entitled to more weight than that of Dr. Cenac, who examined Richard twice at the behest of the District's insurer. However, the proper inquiry is whether, based on the totality of the record, the trial court was manifestly erroneous in accepting the expert testimony presented by the employer over that presented by the employee. Breitenbach v. Stroud, 06-0918 (La. App. 1 Cir. 2/9/07), 959 So.2d 926, 939-940.
[6] Richard argues that he is entitled to the benefit of the "Housley presumption," referring to the legal presumption that exists in Louisiana law that a disability is presumed to have resulted from an accident if, before the injury, the person was in good health and symptoms of the disabling condition appear and manifest afterward. See Housley v. Cerise, 579 So.2d 973 (La. 1991). Richard is not entitled to benefit from the presumption because the record establishes that he was not in good health prior to the accident.